ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| FEDERICO A. CARDONA FIRPI<br><br>Recurrido<br><br>v.<br><br>IVÁN CORREA MUÑIZ<br><br>Peticionario | TA2026CE00398 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: GB2023CV01190<br><br>Sobre: Cobro de dinero por la vía ordinaria |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de mayo de 2026.

Comparece ante nos el señor Iván Correa Muñiz (en adelante, peticionario o señor Correa Muñiz) mediante un *Recurso de Certiorari* presentado el 1 de abril de 2026 y solicita que revisemos la *Resolución* emitida el 23 de enero de 2026 y notificada el 26 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario). Mediante el referido dictamen, el TPI denegó la solicitud del peticionario para descalificar al representante legal del señor Federico A. Cardona Firpi (en adelante, recurrido o señor Cardona Firpi).

El 10 de febrero de 2026, el señor Correa Muñiz presentó una oportuna *Moción de Reconsideración* la cual fue declarada No Ha Lugar por el foro primario mediante *Resolución* emitida y notificada el 3 de marzo de 2026.

Por los fundamentos que exponemos a continuación, expedimos el *certiorari* y revocamos el dictamen recurrido.

**I.**

El 28 de diciembre de 2023, la parte recurrida instó una *Demanda*[1] sobre cobro de dinero por la vía ordinaria contra el peticionario.

El 18 de abril de 2024, luego de que el peticionario presentara su *Contestación a Demanda*[2], el TPI ordenó al Lcdo. Joshua Cruz Ramos, abogado del recurrido (en adelante, Lcdo. Cruz Ramos), coordinar con la representación legal de la parte peticionaria la fecha para reunirse para cumplimentar el *Informe para el Manejo del Caso*.[3] Se ordenó, además, que dentro de los diez (10) días siguientes a la reunión las partes prepararan y presentaran conjuntamente dicho *Informe*.

Luego, el 3 de mayo de 2024, la parte peticionaria notificó a la recurrida un *Primer Pliego de interrogatorio y solicitud de documentos*.[4] Transcurrido el término dispuesto en la Regla 30.1 de Procedimiento Civil para contestar el requerimiento, el 10 de junio de 2024 el peticionario informó al TPI que no había recibido las contestaciones al requerimiento cursado al recurrido.[5]

En cuanto a la *Orden* para coordinar la reunión para preparar el *Informe para el Manejo del Caso*, el 20 de junio de 2024 el foro primario emitió una nueva *Orden*[6] mediante la cual le concedió un término al Lcdo. Cruz Ramos para mostrar cumplimiento, so pena de sanciones económicas. En respuesta, el 1 de julio de 2024, el recurrido informó que, aunque las partes habían pautado la reunión para el 24 de mayo de 2024, por compromisos del Lcdo. Cruz Ramos no se pudo llevar a cabo la misma.[7] A su vez, solicitó una prórroga de veinte (20) días para poder producir los documentos solicitados por el peticionario en su requerimiento del 3 de mayo de 2024.

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[2] Entrada Núm. 9 del SUMAC del TPI.
[3] Entrada Núm. 10 del SUMAC del TPI.
[4] Entrada Núm. 11 del SUMAC del TPI.
[5] Entrada Núm. 13 del SUMAC del TPI.
[6] Entrada Núm. 15 del SUMAC del TPI.
[7] Entrada Núm. 16 del SUMAC del TPI.

No obstante, el 22 de julio de 2024, la parte peticionaria informó al TPI que la parte recurrida nuevamente había incumplido con el término solicitado en la prórroga.[8] A esos efectos, ese mismo día, el foro primario ordenó al recurrido que en el término de diez (10) días mostrara causa por la cual no debía imponérsele sanciones económicas debido a su alegada falta de cumplimiento con el descubrimiento de prueba cursado por la parte peticionaria.[9] Luego de vencido dicho término, el 7 de agosto de 2024 el recurrido presentó una moción informando que habían notificado a la parte peticionaria las contestaciones al *Primer Pliego de interrogatorio*.[10]

El 16 de septiembre de 2024 la parte peticionaria presentó su borrador del *Informe para el Manejo del Caso*.[11] Al día siguiente se celebró la vista para atender la *Conferencia Inicial*.[12] Ambas partes comparecieron representadas por sus abogados. Debido a que las partes no cumplieron con la preparación y presentación conjunta del *Informe*, el TPI ordenó que, dentro de diez (10) días, ambas partes cancelaran el sello de suspensión de la vista y les concedió hasta el 17 de octubre de 2024 para presentar el *Informe*.

El 23 de septiembre de 2024 el peticionario cumplió con la sanción impuesta.[13] Sin embargo, al 1 de octubre de 2024 la parte recurrida no había cumplido con su pago del arancel de suspensión, por lo que el TPI emitió una *Orden*[14] concediéndole un término adicional de tres (3) días para mostrar el cumplimiento, so pena de sanciones económicas. Al día siguiente, el recurrido presentó una moción en la que informó que estaría pagando el arancel a través de la plataforma SUMAC[15] y el TPI dio por cumplida la *Orden*.[16]

---

[8] Entrada Núm. 20 del SUMAC del TPI.
[9] Entrada Núm. 21 del SUMAC del TPI.
[10] Entrada Núm. 24 del SUMAC del TPI.
[11] Entrada Núm. 33 del SUMAC del TPI.
[12] Entrada Núm. 38 del SUMAC del TPI.
[13] Entrada Núm. 39 del SUMAC del TPI.
[14] Entrada Núm. 43 del SUMAC del TPI.
[15] Entrada Núm. 44 del SUMAC del TPI.
[16] Entrada Núm. 45 del SUMAC del TPI.

Posteriormente, en atención a diversas mociones presentadas por las partes con relación a controversias en torno al descubrimiento de prueba, el 7 de enero de 2025, el foro primario emitió una *Orden Descubrimiento de Prueba* [sic][17], mediante la cual dispuso que cualquier controversia relacionada al descubrimiento de prueba debería ser objeto de reunión entre los abogados con el propósito principal de solucionarla y que, sólo después de agotar dicho mecanismo, las partes podrían solicitar la intervención del Tribunal mediante moción conjunta.

El 4 de abril de 2025, la parte peticionaria cursó al recurrido un *Segundo pliego de interrogatorios* y un *Segundo Requerimiento de Producción de Documentos.*[18]

El 2 de junio de 2025, luego de nuevas controversias relacionadas al descubrimiento de prueba, el TPI nuevamente ordenó a las partes continuar con el mismo y a que certificaran, previo cumplimiento con la Regla 34.1 de Procedimiento Civil, en cuanto a las discrepancias habidas entre las partes.[19]

Ante la ausencia de cumplimiento del recurrido dentro del término reglamentario para contestar el *Segundo pliego de interrogatorios* y el *Segundo Requerimiento de Producción de Documentos*, el 25 de agosto de 2025 el peticionario presentó una *Urgente Moción para compeler a Federico Cardona Firpi a contestar los requerimientos de descubrimiento de prueba vencidos hace 113 días, e imponerle severas sanciones por, nuevamente, incumplir con sus deberes procesales de manera prolongada e injustificada*[20]. En su escrito, el señor Correa Muñiz solicitó al TPI que ordenara al señor Cardona Firpi a entregar sus contestaciones, así como que se le impusiera una sanción económica por sus reiterados incumplimientos.

---

[17] Entrada Núm. 50 del SUMAC del TPI.
[18] Entrada Núm. 66 del SUMAC del TPI.
[19] Entrada Núm. 87 del SUMAC del TPI.
[20] Entrada Núm. 93 del SUMAC del TPI.

Ese mismo día, el TPI emitió una *Orden* concediéndole un término de diez (10) días al recurrido para expresarse.[21] Transcurrido dicho término sin que el señor Cardona Firpi presentara su escrito, el 11 de septiembre de 2025 el foro primario ordenó al recurrido que en un término de cinco (5) días entregara sus contestaciones al *Segundo pliego de interrogatorios* y produjera los documentos requeridos, so pena de sanciones económicas. [22]

Posteriormente, el 16 de septiembre de 2025, el recurrido alegó haber cumplido.[23] Sin embargo, el señor Correa Muñiz presentó una *Oposición a Moción en Alegado Cumplimiento de Orden Presentada a Destiempo; Informando las Objeciones Interpuestas; y Reiterando Solicitud de Honorarios y Sanciones*[24] en la que señaló que, además del alegado cumplimiento tardío, las respuestas brindadas por el recurrido no eran responsivas e incorporaban objeciones tardías e improcedentes. Asimismo, reiteró su solicitud de que se impusieran sanciones económicas y el resarcimiento de honorarios de abogado por la conducta de la parte recurrida.

En atención a lo anterior, el TPI resolvió por tercera ocasión que "[l]as diferencias entre las partes relacionadas al descubrimiento de prueba de[be]rán ser atendidas entre las partes de conformidad a lo ordenado el 7 de enero de 2025"[25] y ordenó a las partes que, en un término de veinte (20) días, presentaran una moción conjunta para atender dichas controversias.[26]

El 14 de octubre de 2025, el peticionario informó al TPI que las partes coordinaron una reunión para el 21 de octubre de 2025 para preparar y someter la moción conjunta.[27] El foro primario ordenó que dicha reunión no podría suspenderse sin la autorización del tribunal.[28] A pesar de lo anterior, surge del expediente que el Lcdo. Cruz Ramos no compareció a dicha reunión,

---

[21] Entrada Núm. 94 del SUMAC del TPI.
[22] Entrada Núm. 95 del SUMAC del TPI.
[23] Entrada Núm. 96 del SUMAC del TPI.
[24] Entrada Núm. 97 del SUMAC del TPI.
[25] Entrada Núm. 99 del SUMAC del TPI.
[26] Entrada Núm. 100 del SUMAC del TPI.
[27] Entrada Núm. 103 del SUMAC del TPI.
[28] Entrada Núm. 104 del SUMAC del TPI.

ello sin alegadamente informar ni solicitar autorización al tribunal conforme había sido ordenado por el TPI.[29]

A esos efectos, el peticionario presentó una moción en la que indicó, entre otras cosas, que el recurrido no había justificado su incumplimiento con los términos para cumplir u objetar el descubrimiento de prueba, así como tampoco había expresado las razones para su incumplimiento con las órdenes judiciales ni por qué su abogado no contestaba las comunicaciones de los representantes legales del peticionario. Ante ello, solicitó al foro primario que impusiera sanciones al recurrido.[30]

El 21 de octubre de 2025 el TPI emitió órdenes adicionales relacionadas con la continuación del descubrimiento de prueba[31] y requirió al recurrido expresar su posición sobre las alegaciones del peticionario.[32]

Luego de que se le concediera una prorroga para presentar su escrito, el recurrido solicitó que se declarara no ha lugar la solicitud de sanciones y alegó que el incumplimiento era atribuible a la parte peticionaria.[33]

Atendidos ambos escritos, el 6 de noviembre de 2025, el TPI emitió una *Resolución*[34] en la que nuevamente resolvió que las controversias sobre descubrimiento debían ser atendidas entre las partes antes de acudir al tribunal.

Tras varios incidentes procesales, el 24 de noviembre de 2025, el señor Correa Muñiz presentó una *Moción de Descalificación*[35], mediante la cual solicitó la descalificación del Lcdo. Cruz Ramos. En dicha moción, alegó que el referido abogado había incurrido en conducta que constituía un obstáculo para la sana administración de la justicia, incluyendo reiterados incumplimientos de órdenes judiciales, algunas de las cuales permanecen sin

---

[29] Véanse Entradas Núm. 105 y 118 del SUMAC del TPI.
[30] Entrada Núm. 105 del SUMAC del TPI.
[31] Entrada Núm. 106 del SUMAC del TPI.
[32] Entrada Núm. 107 del SUMAC del TPI.
[33] Entrada Núm. 110 del SUMAC del TPI.
[34] Entrada Núm. 116 del SUMAC del TPI.
[35] Entrada Núm. 126 del SUMAC del TPI.

cumplimiento al momento de presentarse la moción; incumplimiento con términos procesales; objeciones tardías a requerimientos de descubrimiento de prueba; falta de producción de documentos que, según alega el peticionario, están bajo su control exclusivo; y falta de respuesta a comunicaciones entre abogados.

Por su parte, el 30 de diciembre de 2025, la representación legal del señor Cardona Firpi presentó su *Réplica [a] Moción de Descalificación; Moción en Cumplimiento de Orden y Otros Extremos*[36], mediante la cual negó las imputaciones realizadas por el señor Correa Muñiz. En su escrito, la parte recurrida expresó, entre otras cosas, que las alegaciones de incumplimiento carecen de contexto, que se realizaron gestiones para cumplir con órdenes del tribunal, y que existieron comunicaciones entre las partes relacionadas con los asuntos procesales señalados.

Luego de evaluar los planteamientos de ambas partes, el TPI, mediante *Resolución*[37] emitida el 23 de enero de 2026 y notificada el 26 de enero de 2026, resolvió denegar la moción de descalificación presentada por la parte peticionaria. Según la apreciación del foro primario: "las alegaciones esgrimidas, en su mayoría, reflejan desacuerdos procesales, los cuales pueden y deben atenderse mediante los mecanismos ordinarios provistos en las Reglas de Procedimiento Civil."

El 10 de febrero de 2026, el señor Correa Muñiz presentó una *Moción de Reconsideración*[38]. En dicha moción, reiteró que el abogado del recurrido incumplió múltiples órdenes judiciales, realizó representaciones incorrectas al tribunal y no produjo prueba requerida, incluyendo documentos y contestaciones a interrogatorios. También planteó que el tribunal no atendió todos los señalamientos contenidos en la moción de descalificación.

---

[36] Entrada Núm. 138 del SUMAC del TPI.
[37] Entrada Núm. 156 del SUMAC del TPI.
[38] Entrada Núm. 159 del SUMAC del TPI.

Al día siguiente, la parte peticionaria presentó una *Solicitud de Vista para Dilucidar la Moción Descalificatoria*[39], solicitando la celebración de una vista para presentar prueba en apoyo a su solicitud de descalificación.

El 13 de febrero de 2026, el foro primario emitió una *Orden*[40] en la que declaró No Ha Lugar la solicitud de vista.

Posteriormente, el 26 de febrero de 2026, la parte recurrida presentó su *Réplica a "Moción de Reconsideración" y Otros Extremos*[41], en la cual se opuso a la reconsideración solicitada. En su escrito, sostuvo que los planteamientos del peticionario constituían reiteraciones de alegaciones previas y negó las imputaciones realizadas contra su representación legal.

El 3 de marzo de 2026, el TPI emitió una *Resolución*[42] mediante la cual declaró No Ha Lugar la moción de reconsideración presentada por el señor Correa Muñiz.

Inconforme, el 1 de abril de 2026, el señor Correa Muñiz presentó el recurso de epígrafe en el que plantea los siguientes señalamientos de error:

**Primer señalamiento de error:** La Regla 9.3 de Procedimiento Civil dispone para descalificar al abogado que obstruya la sana administración de la justicia, o que infrinja sus deberes para con el tribunal u otros abogados. Desde que presentó la demanda, el Lcdo. Cruz Ramos incurrió en un patrón de conducta obstruccionista continuo—tal como incumplir con órdenes judiciales, desatender deberes reglamentarios y efectuar representaciones incorrectas— en perjuicio de la administración sana y eficaz de la justicia. Ello amerita su descalificación.

**Segundo señalamiento de error:** Nuestro ordenamiento jurídico requiere que toda decisión relacionada con mociones descalificatorias esté debidamente fundamentada, exponiendo todas las razones subyacentes que la sostienen. Correa Muñiz solicitó descalificar al Lcdo. Cruz Ramos por sus actos obstructivos a la sana administración de la justicia. Pero el foro de instancia incidió al no emitir un dictamen que aborde todos los fundamentos que sustentan la moción descalificatoria.

En el recurso de *certiorari,* el peticionario reiteró los planteamientos que hizo ante el TPI tanto en su moción de descalificación, como en la

---

[39] Entrada Núm. 161 del SUMAC del TPI.
[40] Entrada Núm. 164 del SUMAC del TPI.
[41] Entrada Núm. 167 del SUMAC del TPI.
[42] Entrada Núm. 173 del SUMAC del TPI.

reconsideración. Asimismo, planteó que el foro primario no emitió una determinación fundamentada que atendiera todos los planteamientos contenidos en la moción de descalificación.

El 29 de abril de 2026, la parte recurrida presentó su *Oposición a Solicitud de Certiorari*, en la que sostuvo que el foro primario actuó dentro de su discreción al denegar la descalificación, que no procede la intervención apelativa y que la solicitud del peticionario constituye una táctica dilatoria. Además, solicitó la imposición de honorarios de abogado y costas por temeridad a la parte peticionaria. Dicha solicitud **se declara No Ha Lugar**.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 209; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del

Derecho. *Pueblo v. Rivera Montalvo*, supra, pág. 372, citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank v. Zaf Corp. et al.*, 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

De otra parte, como norma general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000), citando a *Lluch et al. v. España Service Sta. et al.,* 117 DPR 729, 745 (1986). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que ésta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

Dicho lo anterior, y pertinente al asunto objeto de esta controversia, mediante la Ley Núm. 177-2010 se enmendó la regla 52.1 de Procedimiento Civil para permitir que este tribunal pudiese atender, mediante *certiorari,*

determinaciones interlocutorias del Tribunal de Primera Instancia en casos que estuviesen revestidos de interés público o en situaciones en que esperar a la apelación constituiría un fracaso irremediable de la justicia. Así, el Tribunal Supremo ha determinado que las repercusiones que pudiera ocasionar no reconocer el derecho de una parte a revisar las órdenes de descalificaciones son revisables de acuerdo con la citada Regla 52.1 de Procedimiento Civil de 2009, ya que "esperar a una apelación constituiría un fracaso irremediable a la justicia". *Job Connection Center v. Sups. Econo*, 185 DPR 585, 594, 601 (2012).

Por los mismos fundamentos concluimos que la denegatoria de una descalificación sería revisable al amparo de la Regla 52.1, *supra,* toda vez que eludiría la revisión y mantendría secuestrado un proceso que aspira a ser justo, rápido y económico. Sería un contrasentido jurídico permitir la revisión de una descalificación por las circunstancias que acarrea para el representante legal, pero prohibirla cuando no se descalifica sin considerar las implicaciones en el proceso que al final del día es lo que la descalificación persigue.

### B. La descalificación del abogado

En el manejo de los casos que se ventilan ante sí, los jueces tienen la facultad de descalificar a un abogado o una abogada si ello resulta necesario para lograr la solución justa, rápida y económica de los pleitos. *ORIL v. El Farmer, Inc.*, 204 DPR 229, 241 (2020); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 661 (2000). A esos efectos, la Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.3, establece lo siguiente sobre la conducta de los abogados:

> El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza, o descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as).

El Tribunal Supremo de Puerto Rico ha expresado que la descalificación de un abogado no constituye de por sí una acción disciplinaria contra los abogados, sino que se trata de una medida preventiva para evitar posibles infracciones a los cánones del Código de Ética Profesional. *ORIL v. El Farmer, Inc., supra*; *Meléndez v. Caribbean Int'l. News, supra*, pág. 660; *K-Mart Corp. v. Walgreens of PR, Inc.,* 121 DPR 633, 637-638 (1988). Además de prevenir una violación a cualquiera de los cánones del Código de Ética Profesional, la descalificación también podría ordenarse para evitar actos disruptivos de los abogados y las abogadas durante el trámite de un pleito. *ORIL v. El Farmer, Inc., supra*; *Meléndez v. Caribbean Int'l. News, supra*, pág. 661.

Por consiguiente, los tribunales, "en el ejercicio de su poder inherente de supervisar y controlar la conducta de los abogados y las abogadas que postulan en sus salas, pueden atender las mociones de descalificación cuando estas surgen como cuestiones colaterales en los casos pendientes ante sí." *ORIL v. El Farmer, Inc., supra*; *K-Mart Corp. v. Walgreens of PR, Inc., supra*, págs. 637-638.

Como dispone la Regla 9.3 de Procedimiento Civil, *supra*, la descalificación puede ordenarse *motu proprio* por el tribunal o a solicitud de parte. En los casos en que la descalificación la solicita la parte adversa, "la mera presentación de la moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión". *ORIL v. El Farmer, Inc., supra*; *Job Connection Center v. Sups. Econo, supra*, pág. 597. En tales circunstancias, el tribunal deberá hacer un análisis de la totalidad de las circunstancias tomando en consideración los siguientes factores:

> (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos.

*ORIL v. El Farmer, Inc., supra,* págs. 242-243; *Job Connection Center v. Sups. Econo, supra*, págs. 597-598.

El Tribunal Supremo ha resuelto que la descalificación de un abogado o una abogada no debe imponerse ligeramente y que solo procederá cuando sea estrictamente necesaria, pues se considera "un remedio drástico que se debe evitar si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes." *ORIL v. El Farmer, Inc., supra,* pág. 244. Al presentarse una moción de descalificación, el juez que la atiende deberá analizar si la continuación de la representación legal le causaría un perjuicio o una desventaja indebida en el caso a quien la solicita. *Job Connection Center v. Sups. Econo, supra*, pág. 598. A su vez, el tribunal deberá:

> "[B]rindar la oportunidad al representante legal, cuya descalificación se solicita, para que se exprese. A esos efectos, en *Otaño v. Vélez*, supra, resolvimos que cuando una parte adversa interpone una moción de descalificación, el abogado contra el cual se presenta esta moción tiene derecho a ser oído y a presentar prueba en su defensa, antes de que el tribunal resuelva la solicitud. Este derecho cumple con las exigencias del debido proceso de ley. *Meléndez v. Caribbean Int'l. News*, supra, pág. 670. En los casos en los cuales el tribunal ordena *motu proprio* la descalificación, la extensión de este derecho a ser oído se cumple al darle la oportunidad al abogado de reaccionar cuando el juez manifiesta las razones por las que procedería la descalificación. Íd.
>
> El reconocimiento de este derecho demuestra la importancia que tiene un proceso de descalificación para un abogado. Debido a las repercusiones que puede conllevar una descalificación, los abogados deben tener la oportunidad, según las exigencias del debido proceso de ley, de demostrar la posible improcedencia de ésta." *Id.*, págs. 598-599.

Asimismo, nuestro Alto Foro ha sido enfático en que los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación, siempre y cuando se demuestre que el foro de instancia abusó crasamente de su discreción, actuó con perjuicio o parcialidad, se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitaría un perjuicio sustancial. *ORIL v. El Farmer, Inc., supra.*

**III.**

Evaluado el expediente ante nuestra consideración, concluimos que procede nuestra intervención. Si bien la descalificación de un abogado constituye un remedio extraordinario que no debe imponerse livianamente, la Regla 9.3 de Procedimiento Civil, *supra*, autoriza al tribunal a descalificar a un abogado cuando su conducta constituye un obstáculo para la sana administración de la justicia o infringe sus deberes hacia el tribunal, sus representados o sus compañeros abogados.

En el presente caso, el tracto procesal refleja una serie de incidencias que trascienden meras discrepancias ordinarias relacionadas con el descubrimiento de prueba. Desde etapas tempranas del litigio, se desprende que el Lcdo. Cruz Ramos incurrió en incumplimientos recurrentes con términos procesales, órdenes judiciales y directrices específicas del foro primario. En particular, surge que la parte recurrida contestó tardíamente ciertos requerimientos de descubrimiento, no cumplió con algunos términos concedidos por el tribunal y ello dio lugar a que el peticionario acudiera en varias ocasiones en solicitud de intervención judicial. Asimismo, consta que el Lcdo. Cruz Ramos no compareció a una reunión entre abogados previamente ordenada por el TPI, la cual no podía ser suspendida sin autorización judicial.

Aunque individualmente algunos de estos incidentes podrían ser atendidos mediante los mecanismos ordinarios de manejo de caso, considerados en conjunto reflejan una conducta reiterada que afectó la marcha ordenada del procedimiento. Ante ese cuadro procesal, el foro primario no debió limitarse a caracterizar los señalamientos como simples desacuerdos procesales. Por el contrario, correspondía evaluar si el patrón señalado ameritaba una intervención judicial más firme, ya fuera mediante sanciones, órdenes específicas de cumplimiento, medidas correctivas o, de ser necesario, la descalificación solicitada.

Así, aunque reconocemos la amplia discreción del TPI en el manejo de los procedimientos ante su consideración, dicha discreción no es irrestricta. En estas circunstancias, entendemos que el foro primario no ejerció adecuadamente su discreción al denegar la moción de descalificación sin considerar en conjunto la totalidad de las circunstancias planteadas ni el efecto acumulativo de los incumplimientos señalados sobre la sana administración de la justicia.

Por consiguiente, resolvemos que los errores señalados fueron cometidos. En consecuencia, expedimos el auto de *certiorari*, revocamos la *Resolución* recurrida y ordenamos la descalificación del Lcdo. Joshua Cruz Ramos como representante legal del recurrido en el caso de autos.

**IV.**

Por los fundamentos antes expuestos, expedimos el *certiorari*, **revocamos** el dictamen recurrido y ordenamos la descalificación del Lcdo. Joshua Cruz Ramos como representante legal del señor Cardona Firpi.

Se ordena la continuación de los procedimientos conforme a lo aquí resuelto. A tales efectos, el foro primario deberá conceder un término razonable al recurrido para que obtenga nueva representación legal.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones